2016 IL App (1st) 140134

THIRD DIVISION
March 9, 2016

No. 1-14-0134

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 14865 |
| | ) | |
| MARCELINO SAUSEDA, | ) | Honorable |
| | ) | Lawrence Edward Flood, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MASON delivered the judgment of the court, with opinion.
Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1     On a Saturday afternoon in the summer of 2009, on 18th Street, one of the main streets though Chicago's Pilsen neighborhood, defendant, Marcelino Sauseda walked up to a car stopped at an intersection and fired four shots into the vehicle, missing the driver, but killing the passenger. A jury convicted Sauseda of murder and aggravated discharge of a firearm and the trial court later sentenced him to 55 years' imprisonment on the murder charge and a consecutive sentence of 7 years for the aggravated discharge of a firearm. The sole issue Sauseda raises on appeal is the length of his sentence, which he claims is excessive.  We disagree and affirm.

¶ 2     Sauseda was charged with the first degree murder of Jeff Maldonado, Jr., and aggravated discharge of a firearm into a vehicle occupied by Angel Santos. On Saturday, July 25, 2009, around 4 p.m., Santos was stopped in his van heading eastbound near the intersection of West

18th and Loomis streets in Chicago when Sauseda walked up to the car and began shooting. Sauseda was wearing a white T-shirt and red shorts and had a black scarf or shirt covering the bottom half of his face. Santos was not struck by any bullets, but Maldonado, who was in the passenger seat, was shot and killed.

¶ 3     Off-duty Chicago police officer Brett Goldstein was driving his car with his wife and young son eastbound on 18th Street when he witnessed Sauseda firing a gun at the van. Goldstein chased Sauseda into an alley, and detained him there with the assistance of another off-duty police officer, who was in a nearby business when the shots were fired. Goldstein later located a semiautomatic weapon he observed Sauseda discard in the alley. The weapon was later matched to shell casings recovered at the scene. After responding officers handcuffed Sauseda, they had him stand and recovered a black scarf or T-shirt from underneath his body.

¶ 4     Sauseda testified in his defense and recounted that he was in the neighborhood to make sure relatives knew about a party his family was having that evening. As he walked down 18th Street, he witnessed an unknown individual firing a gun, followed the shooter into an alley and was arrested shortly thereafter by police, who mistook him for the offender. Although Sauseda tried to tell the officers that the shooter was running away, they did not listen to him. Sauseda denied firing any shots that day, being in possession of a gun or that a black shirt was found under his body after he was arrested.

¶ 5     The jury found Sauseda guilty of first degree murder and aggravated discharge of a firearm. It also found that, during the offense of first degree murder, Sauseda personally

discharged a firearm causing death to another person. Sauseda filed a motion for a new trial, which the trial court denied.

¶ 6     The presentence investigation report (PSI) showed Sauceda was unemployed, had one child, obtained a GED and vocational training, used drugs and alcohol, and was previously convicted of driving under the influence (DUI). Although Sauceda admitted being a member of the Latin Counts street gang since 1999, he reported terminating his gang affiliation several months before his arrest. The PSI also indicated that while Sauseda was incarcerated awaiting trial, he was charged with possession of a weapon (a shank) in a penal institution on March 2, 2011, and again on October 6, 2011.

¶ 7     At the sentencing hearing, the parties presented aggravating and mitigating factors for the court's consideration. Maldonado's parents addressed the court and read their victim impact statements. The State argued in aggravation that Sauseda deserved a sentence greater than the minimum as he had caused or threatened serious harm by firing into the van several times, his actions were unprovoked, and he had perjured himself at trial. The State noted that Sauseda was raised in a stable environment, did not take the needs of his child into consideration when he committed the offenses, was a gang member with gang tattoos, and, since his incarceration, was caught twice with shanks inside Cook County jail. The State emphasized that the court should impose a sentence that would deter others from committing similarly violent crimes, particularly where Sauseda's victim was engaged in lawful activity at the time he was murdered.

¶ 8     In mitigation, defense counsel argued that Sauseda tried to be the best parent he could to his daughter and had obtained his GED. Counsel argued that there was nothing in the record to

indicate that Sauseda was an active gang member, particularly in light of the fact that his criminal history consisted of a single DUI. He further argued that even the minimum sentence would place Sauseda in prison for the rest of his life, as he would not be released until he was 75 years old. In allocution, Sauseda again proclaimed his innocence and stated that the court made the wrong decision.

¶ 9     After reciting that it had considered all the materials presented and the parties' arguments, the court observed that the shooting was senseless and there was no reason for the victim's death. The court noted that any sentence it imposed would likely not deter the acts of violence that occur every day. The court found Sauseda had opportunities to make good decisions where he had a supportive family, obtained his GED, and received vocational training, but had squandered those opportunities by committing a senseless act with a gun. The court sentenced Sauseda to 30 years for first degree murder, plus the 25-year mandatory enhancement for using a firearm, for a total of 55 years. The court also sentenced Sauseda to seven years' imprisonment for the aggravated discharge of a firearm, to be served consecutively to the murder conviction. The court denied Sauseda's motion to reconsider sentence.

¶ 10     Sauseda raises two arguments on appeal. He first contends that his *de facto* life sentence is excessive where the trial court improperly aggravated his sentence based upon the nature of the offense. In particular, Sauseda maintains that the trial court both applied the 25-year firearm enhancement and relied heavily on the fact that the offense was a "senseless act with a gun" in sentencing him to 13 years over the mandatory minimum of 49 years' imprisonment. Sauseda's second argument is that even if only proper mitigating and aggravating factors were considered,

his sentence was excessive because the trial court abused its discretion in failing to consider several factors in mitigation. Although in his statement in allocution, Sauseda continued to maintain his innocence, he has not challenged the sufficiency of the evidence on appeal and thus has abandoned any arguments other than those concerning his sentence.

¶ 11    We note initially that Sauseda has forfeited his first issue on appeal by failing to specifically include it in his motion to reconsider sentence. *People v. Enoch*, 122 Ill. 2d 176, 186-87 (1988). A forfeited argument regarding sentencing, however, may be reviewed for plain error. *People v. Freeman*, 404 Ill. App. 3d 978, 994 (2010) (citing *People v. Hillier*, 237 Ill. 2d 539, 545 (2010)). In order to obtain relief under the plain error doctrine, a defendant must first show that a clear or obvious error occurred. *Hillier*, 237 Ill. 2d at 545. "In the sentencing context, a defendant must then show either that (1) the evidence at the sentencing hearing was closely balanced, or (2) the error was so egregious as to deny the defendant a fair sentencing hearing." *Id*. The defendant has the burden of persuasion under both prongs of the doctrine. *Id*.

¶ 12    Here, Sauseda fails to satisfy his burden to establish a clear and obvious error occurred in sentencing. Sauseda's sentence falls within the sentencing range for his offenses. He was eligible for life in prison because he committed first degree murder by personally discharging a firearm causing the death of another person. See 720 ILCS 5/9-1(a)(1) (West 2008). The sentencing range derives from the combination of the 20- to 60-year range for first degree murder (730 ILCS 5/5-8-1(a)(1)(a) (West 2008); Pub. Act 97-1150, § 670 (eff. Jan. 25, 2013) (repealing 730 ILCS 5/5-8-1(a)(1)(a) (West 2008) (now see 730 ILCS 5/5-4.5-20(a) (West 2014))), with the mandatory addition of a 25-year to natural life range for committing this crime by firing a

firearm and causing death of another person (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2008)). Additionally, the sentencing range for the Class 1 aggravated discharge of a firearm conviction was 4 to 15 years. See 720 ILCS 5/24-1.2(a)(2) (West 2008); 730 ILCS 5/5-8-1(a)(4) (West 2008); Pub. Act 95-1052, § 90 (eff. July 1, 2009) (repealing 730 ILCS 5/5-8-1(a)(4) (West 2008) (now see 730 ILCS 5/5-4.5-30(a) (West 2014)). Therefore, the sentencing range applicable to defendant was 49 years to life in prison. Accordingly, the 62-year sentence imposed was well within the applicable sentencing range and is, therefore, presumptively valid. *People v. Hauschild,* 226 Ill. 2d 63, 90 (2007).

¶ 13     Nonetheless, Sauseda contends that his sentence was the product of the trial court's conduct in both imposing the mandatory 25-year firearm enhancement and considering in aggravation the fact that Sauseda shot Maldonado with a gun. In fashioning a sentence, a court cannot consider a factor that is an element of the offense as an aggravating factor. See *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004). However, this rule " 'is not meant to be applied rigidly, because sound public policy dictates that a sentence be varied in accordance with the circumstances of the offense.' " *People v. Spicer*, 379 Ill. App. 3d 441, 468 (2007) (quoting *People v. Cain*, 221 Ill. App. 3d 574, 575 (1991)). Moreover, "[i]n determining the correctness of a sentence, the reviewing court should not focus on a few words or statements made by the trial court, but is to consider the record as a whole." (Internal quotation marks omitted.) *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007).

¶ 14     Sauseda contends that the court's primary consideration at sentencing was that he was convicted of shooting someone, a factor that was inherent in the offense of first degree murder

and the mandatory firearm enhancement that accompanied it. In imposing sentence, the court stated that it considered the PSI, the arguments made in aggravation and mitigation, the victim impact statements, Sauseda's allocution (during which he continued to profess his innocence and expressed no remorse) and the sentencing factors as set forth in the Illinois Criminal Code. Sauseda highlights the court's following comments:

"In considering the sentence in this case and considering the facts in this case, I am sure it's said many times in the courtroom throughout this building these cases, these shooting[s] are senseless. Absolutely no reason in the world why [the victim] is dead today. It's senseless acts, and they occur[] everyday. And any sentence again that I impose \*\*\* is not going to change that until we change as a society.

And in looking at [defendant's] background, you know, comments are made about the fact that well one of the reasons why these crimes occur is because the family structure and they don't have opportunities.

But I take a look at [defendant's] case. [Defendant] had plenty of opportunities to do right with his life. He has a good family. He had opportunities for education and even went out and after leaving high school got his GED and went to \*\*\* Coyne to receive education in dealing with the HVAC work. Plenty of opportunities squandered for no reason.

Based upon a senseless act with a gun on a street on a Saturday. Senseless."

Sauseda faults the trial court for acknowledging that he committed a senseless act with a gun, asserting this shows the court improperly relied on his use of a gun to increase his sentence.

¶ 15     A trial court is not required to refrain from any mention of sentencing factors that constitute elements of the offense. *People v. Jones*, 299 Ill. App. 3d 739, 746 (1998). Sentencing hearings do not occur in a vacuum and the duty to impose a fair sentence entails an explanation of the court's reasoning in the context of the offenses of which a defendant has been convicted. A fair sentence is not just the product of mechanically tallying factors in aggravation and mitigation and calculating the result. Indeed, a sentencing hearing is likely the only opportunity a court has to communicate its views regarding the defendant's conduct and thus we do not agree that a trial judge's commentary on the nature and circumstances of a defendant's crimes necessarily results in improperly using elements of the offense as factors in aggravation.

¶ 16     When read in context, the trial court's comments here do not show the court improperly imposed sentence based primarily on the fact that Sauseda shot someone with a gun. As the State points out, the court determined Sauseda's sentence based on the nature and circumstances of this case, including the fact that the victim was merely sitting in the passenger seat of a car that was stopped at a red light when Sauseda walked up to the van and opened fire. The court properly recognized that Sauseda committed a senseless act of violence on defenseless victims, an act he chose to commit despite knowing the probable, deadly consequences.

¶ 17     A reasoned judgment regarding the proper penalty to be imposed must be based on the particular circumstances of each case. *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986). Relevant factors for the trial court's consideration include the defendant's demeanor, habits, age, mentality, credibility, general moral character, social environment, and the nature and circumstances of the offense. *Id*. at 268-69. Certain types of criminal conduct may warrant a more severe penalty than

other conduct, even though both are punishable under the same statute. *Id*. at 269. In fact, the severity of the sentence depends upon the degree of harm inflicted on the victim and as such may be considered as an aggravating factor in imposing the sentence, even where serious bodily harm is implicit in the offense. *Id*. As relevant to this case, it is permissible for the sentencing court to consider the force employed and the physical manner in which the victim's death was brought about in a conviction for murder. *Id*. at 270.

¶ 18    Here Sauseda, armed with a gun, took deliberate aim at two men sitting in a car and fired several shots at close range. The trial court properly considered the degree and gravity of this conduct and the nature and circumstances of Sauseda's offense in imposing sentence. See *id*. at 271-72 (stating that a trial court's finding in aggravation may be directed at the gravity of the defendant's conduct, but not on the end result of the defendant's conduct, *i.e.*, the victim's death). The record here does not establish that the court improperly considered an element of the offenses as an aggravating factor in sentencing.

¶ 19    With respect to Sauseda's second issue—the trial court's claimed failure to consider mitigating factors—a trial court has broad discretion to determine an appropriate sentence, and a reviewing court may reverse only where the trial court has abused that discretion. *People v. Patterson*, 217 Ill. 2d 407, 448 (2005). The reviewing court should not substitute its judgment for that of the trial court simply because it would have balanced the appropriate sentencing factors differently. *People v. Alexander*, 239 Ill. 2d 205, 214-15 (2010). A sentence within the statutory range does not constitute an abuse of discretion unless it varies greatly from the purpose of the law or is manifestly disproportionate to the nature of the offense. *People v. Henderson*, 354 Ill.

App. 3d 8, 19 (2004). Where mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it. *People v. Benford*, 349 Ill. App. 3d 721, 735 (2004). The trial court is not obligated to reduce a sentence from the maximum allowed simply because mitigating factors are present. *People v. Pippen*, 324 Ill. App. 3d 649, 653 (2001).

¶ 20    From the trial court's statements at Sauseda's sentencing, it is clear the court thoughtfully weighed the appropriate mitigating and aggravating factors and sentenced Sauseda to a term within the permissible sentencing range. Nevertheless, Sauseda maintains that his sentence is excessive as (1) his entire criminal history consisted of a single conviction for DUI, (2) the conduct resulted from circumstances unlikely to recur, (3) even under the minimum sentence, he would be 75 years old when released, (4) his daughter will be deprived of her father's presence, and (5) he had substance abuse problems. But defense counsel raised the first four factors to the court in his argument and the fifth factor is reported in the PSI. There is thus nothing in the record rebutting the presumption that the court considered them. *Benford*, 349 Ill. App. 3d at 735. We thus presume the court considered these factors in rendering its decision. *Id*.

¶ 21    Sauseda further argues that the trial court erred in considering his general background, *i.e.*, his growing up without a father figure, obtaining his GED, and graduating from the Coyne Institute, as an aggravating factor instead of a mitigating factor. But a fair reading of the record does not show that the court treated Sauseda's background as an aggravating factor. Instead, the court simply noted that Sauseda had opportunities to be successful that he squandered, an observation that appears to be entirely accurate. Essentially, Sauseda asks us to reweigh the

factors relevant to his sentence, which is not a proper exercise for a court of review. See *People v. Stacey*, 193 Ill. 2d 203, 209 (2000) (reviewing court must not substitute its judgment for that of the trial court simply because it would have weighed aggravating and mitigating factors differently).

¶ 22    Finally, Sauseda asserts that, in imposing the sentence, the court gave no consideration to the financial costs of incarcerating him in the Illinois Department of Corrections for so many years. See 730 ILCS 5/5-4-1(a)(3) (West 2008) (sentencing court "shall" "consider the financial impact of incarceration based on the financial impact statement filed with the clerk of the court"). But a trial court is not required to specify on the record the reasons for a defendant's sentence, and, absent evidence to the contrary, the trial court is presumed to have performed its obligations and considered the financial impact statement before sentencing a defendant. *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 24. Here, Sauseda points to nothing in the record to rebut the presumption that the trial court considered the financial impact statement before sentencing him, and we thus presume the court acted in accordance with the law when it sentenced him to 62 years in prison.

¶ 23    Because of the conclusions we reach regarding the propriety of Sauseda's sentence, we necessarily reject his claim that trial counsel was ineffective for failing to preserve his sentencing arguments as those arguments would not have produced a different result.

¶ 24    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 25    Affirmed.